[L. A. No. 1310.   Department Two.—February 4, 1905.]

## LOS ROBLES WATER COMPANY, Appellant, v. ADELE STONEMAN, and GERVAISE PURCELL, Respondents.

Injunction—Diversion of Water—Real Party in Interest—Water Company—Contract between Owners and Grantor—Trust—Distribution from Reservoir.—A water company organized as a corporation by agreement between the owners of water-rights appurtenant to their lands and their grantor's, and which was clothed with title to the water-rights, and to a reservoir site, waterworks, and pipes for distribution from the reservoir, according to their respective interests, for which certificates of stock were issued to the grantees and grantor, it being agreed that the corporation should control the distribution from the reservoirs through pipes and hold the water-rights in trust for the landowners respectively, may, after the contract has been fully carried into effect, sue as the real party in interest to enjoin a wrongful diversion of water from the reservoir by persons claiming under the grantor, who took without consideration and with full notice of the rights of the parties, and who had no greater rights than the grantor.

Id.—Injury to Owners of Lots—Estoppel of Grantor—Title of Water Company.—Although the injury was caused to the owners of the lots in violation of an agreement by the grantor thereof to make certain water-rights appurtenant thereto, and binding the

grantor and her heirs and assigns to deliver the water for the benefit of the grantees and their heirs and assigns, in a reservoir to be constructed by them upon a reservoir site to be conveyed by the grantor to them, the grantor is estopped to deny the title of the corporation or its right to sue for the injury, where, by the deeds to them, the corporation was provided for, and the grantees who had received their money on the faith of the agreement for such cor-poration participated therein, and joined in the conveyance thereto of the reservoir site and water-rights in trust for distribution from the reservoir according to the interests of the respective parties.

Id.—Test of Real Party in Interest—Protection of Defendants by Judgment.—The action by the corporation to enjoin diversion of the water is by the real party in interest where the judgment in its favor will protect the defendants against an action by the lot-owners whose water-rights are vested in the corporation.

Id.—Contract with Corporation for Benefit of Lot-Owners.—The corporation was authorized to sue upon the contract made by the grantor of the lots therewith for the benefit of the lot-owners by the distribution of the water from its reservoir to them and their grantees.

Id.—Validity of Trust.—The trust in the corporation was not void as being an invalid trust as to real estate. The stock which carries the rights to the use of the water from the reservoir was trans-ferable, and the land was alienable. The property delivered in the reservoir may be regarded as personal property, which might be held in trust for the purpose of distribution; and the trust was in sub-stance that between a corporation and its stockholders.

Id.—Charge upon Water-Bearing Lands—Easement—Right of En-forcement.—Where the grantor of the lands expressly made her conveyance of the water-rights appurtenant thereto an encumbrance or charge upon her water-bearing lands, and covenanted that the water should flow perpetually, and that the covenant should "bind her heirs, successors in interest, and assigns of the water-bearing lands," the extent of the servitude is determined by the terms of the grant; and the corporation as the legal owner and occupant of the dominant tenement may maintain an action for the enforce-ment of the easement attached thereto.

APPEAL from a judgment of the Superior Court of Los Angeles County. Waldo M. York, Judge.

The facts are stated in the opinion.

Stephens & Stephens, for Appellant.

Lynn Helm, for Respondents.

COOPER, C.—This action was brought to restrain defendants from taking water from certain pipes, for a mandatory injunction compelling them to deliver water, and for damages. The demurrer of defendants to the amended complaint was sustained, and judgment entered in their favor. Plaintiff prosecutes this appeal, for the purpose of reviewing the ruling on the demurrer.

The facts alleged must, for the purposes of this decision, be deemed to be true. They are in substance as follows: In the year 1891, Mrs. Mary O. H. Stoneman was the owner of two tracts of land in Los Angeles County, the first being the Los Robles Rancho, consisting of one hundred and sixty-five acres, the second being the Los Robles Park tract. The first tract was farming or orchard land and the second tract was higher and water-bearing land. While she was so the owner she concluded to subdivide and sell the first tract, and, to aid her in so doing, to grant certain appurtenant water-rights with each subdivision sold, the water to be supplied from the second tract, upon which there were more than sixteen and a half miner's inches of water rising in and flowing thereon, which could be conducted to the first tract by means of pipes. She accordingly subdivided the first tract into lots of about ten acres each, and sold one hundred and forty acres during the year 1891 to different purchasers, to each of whom she granted, as appurtenant to the lot conveyed, a constant flow of water equal to one inch, miner's measurement, to each ten acres, and in like proportion for larger or smaller tracts, to be taken from the said water rising in the second tract. Deeds were made by the grantor to the respective purchasers conveying the land and water appurtenant thereto, and, after a description of the subdivision conveyed, the deeds each provided that the grantor on or before the first day of February, 1892, would convey to the purchasers one acre of land for reservoir purposes; that a reservoir should be constructed upon the acre of land by the grantees; that the water for the grantees should be delivered into the one reservoir when completed. The deed, in each case, further provided that if a majority of the consumers of water should elect to incorporate for the purpose of managing and controlling the storage and distribution of the waters of said reservoir and should so notify the consumers of water, that all such consumers and

grantees should be held to have agreed to incorporate for the purposes of managing and controlling the distribution of said sixteen and a half inches of water and should convey to the corporation their several water-rights, and receive certificates of stock therefor.

The deeds so made by Mrs. Stoneman each contained the following covenant: "The party of the first part for herself, her heirs, successors in interest, and assigns, further agrees to cause said . . . water to flow perpetually to said party of the second part into said reservoir to be constructed as aforesaid, his heirs and assigns forever. . . . And the party of the first part covenants that sixteen and one-half (16½) miner's inches of water shall be forever conducted to the said reservoir from its immediate sources—either springs, tunnels, or other excavations—in and by substantial pipes in all respects sufficient for such purpose, to be forever maintained throughout in good serviceable condition by the party of the first part, her successors in interest, heirs, and assigns, and that the water shall be forever preserved pure and free from any and all contamination, which obligation shall forever apply and bind her heirs, successors in interest, and assigns of said water-bearing land."

After the conveyance was made the parties to whom the lots and appurtenant water-rights were conveyed consented to, and did, incorporate, the plaintiff being the corporation so formed. After the incorporation of plaintiff, the parties who had purchased the several tracts of land, and Mrs. Stoneman, their grantor, signed, executed, acknowledged, and delivered to plaintiff a conveyance which contained a general recital of the facts and recited the conveyance of the one acre to plaintiff for a reservoir site, and further recited that "whereas, they [the grantors] have severally acquired interest in waters, to-wit: 16 569-1000 inches, each inch equivalent to a continuous flow of one-fifteenth of a cubic foot per second, rising above said reservoir on the elevated lands now or formerly of Mrs. Mary O. H. Stoneman on the Los Robles Rancho . . . which said waters are appurtenant to those lands described in said above-mentioned maps as lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18."

Then, after other recitals, the conveyance states that the grantors "severally hereby grant, bargain, sell, and convey

unto the party of the second part, each, all of their several interests in and to said waters and in and to all rights of way and main distributing pipe-lines used and held in connection with said reservoir site and said waters, with power upon the party of the second part; . . . to manage and control the waterworks and pipes in connection with said reservoir, and for the distribution of said waters.  Said waters to be taken, held, and owned by the party of the second part in trust for the several owners of said lots of land, the parties of the first part, and for distribution among them in proportion to their several interests in said waters.  To distribute said waters to the several owners of said lands and their grantees.''

Thereupon the plaintiff issued shares of stock to the several purchasers in proportion to the amount of water owned by each appurtenant to his land, who have ever since owned and claimed the said stock and recognized the title of plaintiff to the water and rights conveyed to it by said deed.  The plaintiff thereupon went into possession and continuously thereafter, until interrupted by defendants, for a period of more than five years, continued in the peaceable possession of said waters and property, claiming the same adversely to all the world, and distributing the same to its said stockholders as per their agreements and rights.

At the time of the conveyance to plaintiff Mrs. Stoneman still owned twenty-five acres of orchard land of the first tract and had shares of stock issued to her on the basis of two and a half inches of water.

The plaintiff was really created and came into being for the purposes, and as part of the scheme of Mrs. Stoneman, in connection with the sale of the lots to the several purchasers. It was the agent or instrument to whom the reservoir site was conveyed, and through whom all the parties, including Mrs. Stoneman, were to receive the water after Mrs. Stoneman had delivered it to the reservoir.

On May 19, 1897, Mrs. Stoneman conveyed the second tract, or water-bearing lands, and the twenty-five acres of the first tract, or orchard lands, to defendant Purcell.  In May, 1898, defendant Purcell conveyed the second tract to Adele Stoneman, both deeds being made without consideration.  The twenty-five acres of the first tract so conveyed by Mrs. Stoneman

to Purcell has received its share of water and has been irrigated by plaintiff under the general plan and system.

Prior to the execution of the deed to plaintiff Mrs. Stoneman had constructed a pipe-line from the second tract down to the reservoir and caused said sixteen and a half inches of water to be delivered to plaintiff in its said reservoir, as she had covenanted to do. All this had been done, and the several conveyances made to the purchasers of the lots in the first tract, before the conveyances were made to defendants, and they took with full knowledge of the rights of all parties to said waters.

Upon the execution of the conveyance to defendants, they entered into possession of the second tract of land and of the pipe-line leading therefrom, and diverted from the pipe-line into which the waters had been delivered to plaintiff about two inches of the sixteen and a half inches of water, and ever since have diverted, and claim the right to take and divert for their own use, about two inches of said waters, which under the deeds and contract should flow into said pipe and into plaintiff's reservoir. Although requested, defendants refused, and continue to refuse, to turn the said two inches of water into the pipe-line, or to permit plaintiff to do so, and they will, unless restrained, continue to divert said water from said pipe-line and from said reservoir, to the great injury of plaintiff.

The court below held that plaintiff was not the real party in interest, and that it had no beneficial interest in the subject-matter of the action.

Defendants' counsel argues, in support of the ruling, that the plaintiff by the conveyance to it did not acquire ''any interest in said waters sufficient to enable it to bring an action for their diversion or any interference therewith.''

We may assume, for the purposes of this discussion, that the defendants, taking without consideration, and with full knowledge of the rights of all parties, are in no better position than Mrs. Stoneman would be if she had not made the conveyance to defendants and had diverted the water as these defendants have done. After receiving the money of the parties to whom she conveyed lots, in consideration of her agreement to deliver sixteen and a half inches of water to plaintiff for them, and after inducing them to incorporate and

expend their money in building a reservoir and a system of pipes for the distribution of the water, and after conveying the water to plaintiff, she will not be allowed to divert the water and say that plaintiff has not sufficient legal title to maintain the action. She joined in the conveyance of the legal title to plaintiff. She will not now be allowed to say that plaintiff has no interest in receiving what was legally conveyed to it. Plaintiff is, as all corporations are, the artificial person representing the shareholders. It acts for the shareholders, and its property is the property of those who hold the certificates of stock. It cannot live in houses, wear clothes, ride in carriages, or eat the fruit produced on the lands, but it can under our laws sue and be sued and protect the property rightfully conveyed to it. The purchasers of the lots from Mrs. Stoneman agreed among themselves and with her to create plaintiff. They did this so as to have a common reservoir and a common system of pipes, instead of having many reservoirs and many pipe-lines. Mrs. Stoneman joined in the conveyance and conveyed the reservoir site as an inducement to the parties to purchase her land. It is true that the water made appurtenant to each lot or parcel of land is still appurtenant to such lot or parcel, and that the owner of the lot or parcel would be the one injured by a diversion of the water or any part of the water to which such lot is entitled. But for this reason it will not be held that each separate owner of the eighteen lots must bring a separate action. It might in such case be difficult to show just how much water was diverted from, and how much injury was done to, each owner of the lot. It is not difficult to hold that plaintiff is entitled to the two inches of water that defendants' grantor conveyed to it. If we should hold that Mrs. Stoneman or her successors must deliver the amount of water she agreed to deliver to the artificial person to whom she agreed to deliver it, the parties entitled to it can determine their several rights without allowing defendants to cause vexation and delay because the plaintiff does not claim the water for itself. It is the duty of a party making a lawful contract to live up to it. It is not the business of such party to raise the question as to the person or persons to be benefited by the result of the contract being performed. If the plaintiffs were an independent artificial person, having no relation with the parties

CXLVI. Cal.—14

by and through whom it was created, and held no property belonging to any of the parties to the transaction leading up to its incorporation, the question would be quite different. But it was created for the very purpose of carrying out the agreements of the parties. In such case a court of equity will reach out beyond the form and shadow and grasp the substance. It will endeavor to aid the parties in carrying out their contract, and in enforcing their respective rights under them, rather than to lend its assistance to defeat such contracts by imaginary obstacles. In this case a judgment in favor of plaintiff would protect the defendants from further suits by the owners of the lots as to the same matter. This is all that defendants are entitled to, or that they have a right to expect. The statute provides that an action shall be prosecuted in the name of the real party in interest. (Code Civ. Proc., sec. 367.) It also provides that a person with whom or in whose name a contract is made for the benefit of another may sue without joining with him the persons for whose benefit the action is prosecuted. (Code Civ. Proc., sec. 369.) The contract in this case was made by Mrs. Stoneman with plaintiff for the benefit of the parties to whom Mrs. Stoneman conveyed the several lots. It provided that plaintiff should ''distribute said water to the several owners of said lands and their grantees.''

In speaking of the meaning and object of the code in requiring that an action shall be prosecuted in the name of the real party in interest, this court said in *Giselman* v. *Starr,* 106 Cal. 657: ''It is to save the defendant against whom a judgment may be obtained from further harassment or vexation at the hands of other claimants to the same demand. It is to prevent a claimant from making a simulated transfer, and thus defeating any just counterclaim or set-off which defendant would have to the demand if pressed by the real owner. But where the plaintiff shows such a title as that a judgment upon it satisfied by defendant will protect him from future annoyance or loss, and where, as against the party suing, defendant can urge any defense he could make against the real owner, then there is an end of the defendant's concern and with it of his right to object; for, so far as he is interested, the action is being prosecuted in the name of the real party in interest.''

It is evident that by the above test the judgment in this case will protect defendants or bar them, as the case may be. The several parties to whom the water was conveyed joined in the agreements and required that the water be delivered to the plaintiff in the reservoir "to be taken, held, and owned" by the plaintiff for the several owners of the lots. Nor was the conveyance to plaintiff void as an express trust in real estate. The conveyance states that the waters are to be held and owned in trust for the several owners of the lots, but this would be true if it had not been so stated in the deed. The corporation, as matter of law, would hold the water and all other property in trust for its stockholders. The stock, which carries the right to the use of the water, is transferable, and the land is alienable. The property is not tied up and withheld from the channels of trade, and hence the kind of conveyance here is not among the evils prohibited by the provision of the code upon express trusts as to real estate. The water when delivered into the plaintiff's reservoir from the lands of the grantor may be regarded as personal property. We know of no law prohibiting the plaintiff from holding the title to such property in trust for the purposes of distribution. In fact, the statement that the property is held in trust is in substance but a statement as to the relations between the plaintiff and its stockholders.

It is not necessary in this case to decide the question as to whether or not the covenants run with the land and are binding upon the present owners. Mrs. Stoneman, while she owned the water-bearing lands, conveyed the sixteen and a half inches of water as an encumbrance or charge upon the land; she expressly covenanted that the water should flow perpetually, and that the covenant in each case should "bind her heirs, successors in interest, and assigns of said water-bearing lands." The extent of a servitude is determined by the terms of a grant or the nature of the enjoyment by which it is acquired. (Civ. Code, sec. 806.)

The owner of an estate in a dominant tenement or the occupant of such tenement may maintain an action for the enforcement of an easement attached thereto. (Civ. Code, sec. 809.) If the covenant had been to furnish the water to a third party, or to do something independent of the grantor and grantee, and not connected with the thing transferred,

then it would be different; but in this case to say that the covenant was for the benefit of the reservoir, or for the benefit of a third party, would be to ignore the plain, common-sense, practical view of the covenant and contract made by the parties.

We advise that the judgment be reversed, with directions to the court below to overrule the demurrer.

Harrison, C., and Gray, C., concurred. ·

For the reasons given in the foregoing opinion the judgment is reversed, with directions to the court below to overrule the demurrer. McFarland, J., Lorigan, J., Henshaw, J.

Hearing in Bank denied.