[S. F. No. 8926.  In Bank.—July 7, 1921.]

## M. H. HARRIS, Appellant, v. NELLIE CLAYTON, Respondent.

[1] ACTION FOR GOODS SOLD AND DELIVERED—TRANSACTION BY TRAVELING SALESMAN—PLEADING—REAL PARTY IN INTEREST.—Where a traveling salesman, who was permitted by his employers to also do business on his own account, made a sale of the firm's goods, and the account was carried in his own name and no account with the buyer appeared on the firm's books, and no disadvantage was suffered by the buyer from the manner in which the account was kept, the assignee of the salesman had the right to maintain an action for the price in his own name, either on the theory that he was the real party in interest, or, if an agent, was acting with authority to carry and collect the account in his own name, thereby becoming the trustee of an express trust within the meaning of section 369 of the Code of Civil Procedure, notwithstanding the salesman introduced himself to the customer as the representative of the firm and the correspondence between them was on the firm stationery and the invoices and statements rendered on the firm billheads.

[2] STATUTE OF LIMITATIONS—APPLICATION OF PAYMENTS—DIRECTION OF BUYER TO SELLER—TOLLING OF STATUTE.—A letter of a buyer to a seller directing the latter to apply monthly remittances on an old account with the express purpose of preserving rights on an open current account for goods subsequently purchased, tolls the statute of limitations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  George A. Sturtevant, Judge.  Reversed.

The facts are stated in the opinion of the court.

Arnold C. Lackenbach and Lionel D. Hargis for Appellant.

Brantley W. Dobbins and H. M. Anthony for Respondent.

SLOANE, J.—The plaintiff brought this action as the assignee of one W. J. Conroy to recover a balance on account for goods sold and delivered from San Francisco to the defendant in Manila, Philippine Islands.

The account covered a period of several years and the total sales amounted to many thousands of dollars upon which payments were made from time to time.

It is claimed by plaintiff that the account was carried for the entire period as an open running mutual account. The items sued for constitute an alleged balance for goods sold and delivered between the first day of November, 1913, and the first day of August, 1914, in the sum of $3,715.37.

The same amount is also sued for in a separate cause of action on account stated, but this count was not pressed, no evidence being offered in its support.

The defendant interposed two defenses. First, that the suit was not brought in behalf of or in the name of the real party in interest; and, second, that the balance owing on the account, the amount of which was not disputed, was for goods purchased prior to March 17, 1913; and thereafter was stated by oral agreement between the parties in July, 1914, and that any claim therefor, whether on the open account or as a stated account, was barred by the statute of limitations. The complaint was filed March 7, 1917.

The findings material to the issues here presented are as follows:

"Second: That on or about the month of March, 1911, W. J. Conroy, who was then and ever since has been, in the employ of Muller & Raas, wholesale milliners, engaged in the business of wholesale millinery in the said city and county of San Francisco, acting for and on behalf of Muller & Raas, entered into an oral agreement with the defendant whereby the defendant agreed to purchase on open book account, and the said W. J. Conroy acting for and on behalf of Muller & Raas, agreed to sell to the defendant on open book account at Manila, Philippine Islands, millinery goods, and thereafter and commencing in the month of March, 1911, said goods were so sold and delivered to defendant at Manila and that from time to time additional goods were sold, as aforesaid, on open book account, up to the twenty-sixth day of December, 1912; thereafter defendant pur-

chased millinery goods from said W. J. Conroy, acting for
and on behalf of Muller & Raas, through Peabody & Company, of Manila, Philippine Islands, and San Francisco,
paying for said millinery goods cash at San Francisco, and
that said cash transactions continued up to the fifteenth day
of October, 1913, at which time the defendant assigned the
millinery business which she then maintained at Manila,
Philippine Islands, to Peabody & Company.

"Third: That the defendant between the month of March,
1911, and the twenty-sixth day of December, 1912, purchased through W. J. Conroy, who was then and ever since
has been in the employ of Muller & Raas, wholesale milliners engaged in the business of wholesale millinery in said
city and county of San Francisco, acting for and on behalf
of said Muller & Raas, and entered into an oral agreement
with said W. J. Conroy whereby the defendant agreed to
purchase on open book account at Manila, Philippine Islands, millinery goods, and thereafter and commencing in
the month of March, 1911, said goods were so sold and delivered to the defendant at Manila, and that from time to
time thereafter additional goods were sold as aforesaid, on
open book account, up to the twenty-sixth day of December,
1912; that on the first day of July, 1914, the said account
was stated and upon such statement a balance of three thousand seven hundred and fifteen and 37/100 dollars was
found to be due against the defendant, in favor of said
W. J. Conroy, acting as aforesaid, in favor of said Muller &
Raas."

As conclusions of law the court finds that the plaintiff is
not the real party in interest and that the claim sued on is
barred.

We agree with appellant that the evidence does not support the finding that Conroy, plaintiff's assignor, was not a
proper party in interest. It is true, as contended by respondent, that Conroy introduced himself to her as the representative of the San Francisco millinery firm of Muller
& Raas, and his subsequent dealings with her were calculated to assure her and doubtless did lead her to the conclusion that she was dealing with the firm of Muller & Raas
through Conroy as its agent. A conversation which respondent testified to between herself and a member of the firm
of Muller & Raas in effect confirmed this belief. The cor-

respondence between Conroy and respondent was mostly on the firm stationery, and the invoices and statements were rendered upon the firm billheads.

This evidence would be ample to estop the plaintiff from disputing the fact, as found, if any fraud upon respondent or disadvantage or damage to her were shown. But no elements of estoppel enter into the case. Respondent makes no claim that she suffers disadvantage by permitting it to be shown that Conroy was carrying this claim on his own account, or at least in his own name as a trustee for his firm.

That this was actually the case there can be no question under the evidence. Conroy testifies that while he was the traveling salesman of Muller & Raas within certain territory, that he was also doing business on his own account in the Orient with the consent of his employers, and that this was one of the accounts carried in his own name. The only entry of account in this transaction was shown to have been one kept by himself; and one of the members of the firm of Muller & Raas and secretary of the company testified that he was familiar with the accounts of the firm and that they had never sold Mrs. Clayton any goods and never rendered her any account or demand, and that Conroy was privileged to and did carry accounts for himself in the Orient and in Australia. No attempt was made to show that any account with Mrs. Clayton appeared upon the firm books. The witness testified that while he had not examined the books to verify his statement, he was positive there was no such account.

Mrs. Clayton testifies to a conversation which she had on one of her visits to San Francisco with a member of the firm, one of the Raas brothers, which, like her dealings with Conroy, would justify her belief that the firm was carrying the account. She says: "He also told me that he found from long experience that it was best to have one representative, one territory, and that all my negotiations should therefore be addressed to Mr. Conroy, and all the banking business, all the custom-house business, all the cable codes, invoices, bills, etc., should be attended to by Mr. Conroy as the Eastern representative of the firm of Muller & Raas."

At the same time, this representation by a member of the firm authorized respondent to look to and deal with Conroy

exclusively, and on the strength of this authorization she admits having carried on all her correspondence and made all of her remittances directly and personally to Conroy. In her answer defendant pleads that an oral account was stated on or about the 15th of August, 1914, "between said W. J. Conroy and the defendant," and that upon such statement "a balance of $3715.37 was found due to the said W. J. Conroy from said defendant."

[1] We are satisfied under this state of the evidence that the plaintiff could maintain this action as the assignee of Conroy either on the theory that he was the real party in interest, or, if an agent, was acting with authority to carry and collect the account in his own name, and thereby became a trustee of an express trust within the meaning of section 369 of the Code of Civil Procedure.

Section 367 of the Code of Civil Procedure, which requires that every action must be prosecuted in the name of the real party in interest, makes an exception as provided in section 369 of the same code to the effect that a trustee of an express trust may sue without joining with him the persons for whose benefit the action is prosecuted, and declares that "A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section."

In Mechem on Agency, second edition, section 2028, it is said: "The agent's right to sue in these cases (where a third person has dealt with an agent) is not usually defeated by the statutory provisions found in many of the states that actions shall be brought in the name of the real party in interest; since these statutes either contain express exceptions, or, under the right of a trustee of an express trust to sue, provide such comprehensive definitions of such a trustee as to include an agent who has made a contract for his principal."

In *Tandy* v. *Waesch*, 154 Cal. 108, [97 Pac. 69], the plaintiff had entered into a contract for the purchase of land in his own name but for the benefit of a third party. In an action under this contract he was held a proper party plaintiff. This court in the opinion in the case cited thus states the rule as provided in sections 337 and 339 of the Code of Civil Procedure: "Tandy, however, was a proper party plaintiff. To the general rule laid down in section 367, of the Code of Civil Procedure, that every action must

be prosecuted in the name of the real party in interest, there are certain exceptions specified in section 369 of the Code of Civil Procedure. That section authorizes the trustee of an express trust to sue without joining the beneficiary and declares that a person with whom, or in whose name a contract is made for the benefit of another, is a trustee of an express trust within the meaning of this section. The contract having been made in Tandy's name for the benefit of Garland, Tandy thus became the trustee of an express trust and entitled to maintain the action." (See *Walker* v. *McCusker,* 71 Cal. 594, [12 Pac. 723]; *Giselman* v. *Starr,* 106 Cal. 657, [40 Pac. 8]; *Los Robles Water Co.* v. *Stoneman,* 146 Cal. 204, [79 Pac. 880]; *Anglo-Californian Bank* v. *Cerf,* 147 Cal. 384, [81 Pac. 1077]; Pomeroy's Code Remedies, secs. 103, 105; Bliss on Code Pleadings, sec. 57.)

Appellant makes objection to the sufficiency of the findings on this point.

Referring again to the findings quoted, it will be observed that there is no direct finding that defendant did not become indebted to W. J. Conroy in the sum of $3,715.37 between the first day of November, 1913, and the first day of August, 1914, on an open book account, as alleged in the complaint.

The finding upon which this issue for defendant rests is only to the effect that up to the twenty-sixth day of December, 1912, goods were sold to defendant by W. J. Conroy acting for Muller & Raas, and that thereafter within the dates alleged by the complaint "defendant purchased millinery goods from W. J. Conroy acting for and on behalf of Muller & Raas through Peabody & Company of Manila, Philippine Islands, and San Francisco, paying for the millinery goods cash at San Francisco."

It does not affirmatively appear that the account covered by the findings was the same as that declared upon in the action. While, however, appellant disputes the sufficiency of this finding to support the judgment, no question is made that there was any other transaction had between the defendant and either Muller & Raas or Conroy than the one referred to in the findings, and it may be held to sufficiently refer to the account in suit,

As to the contention of appellant that this finding as to the payment for all goods delivered, between the dates named, is not supported by the evidence, we cannot so hold, unless upon. grounds later to be discussed. There is evidence to the effect that during the period covered by the items of account sued for Mrs. Clayton did no business personally with Conroy or his firm. That under some arrangement with Peabody & Company that firm purchased and advanced the money for all the goods bought through Conroy for Mrs. Clayton. This is borne out by the itemized account of Conroy which shows charges for goods at various dates within the period mentioned, and in each instance a corresponding credit by cash of the exact amount of each separate charge, by Peabody & Company, within thirty days after delivery of the goods. Peabody's representative testified that his firm ordered the goods on advices from Manila, received them and forwarded them to the Clayton establishment in Manila, and paid for them with the Peabody & Company check. All but two of the charges covered by the complaint so appear, and Mrs. Clayton testified that she did not order or receive the goods comprising these.

It is a fair conclusion from the evidence thus far referred to that as found by the court the old account was closed prior to December 26, 1912, with a balance then due from defendant of some $4,851.86. In her subsequent correspondence with Conroy this was referred to by Mrs. Clayton as "the old account."

There is sufficient support in the evidence under this state of facts to uphold the finding of the court that the subsequent purchases had been paid for and that the old account was barred by the statute of limitations.

The true state of the case with reference to the claim actually sued on would be that it had been paid rather than that it was barred.

It, however, further appears from the record that Conroy had carried this account on his books throughout as an open running account. That the goods sold were charged to Mrs. Clayton and the various payments credited on account, with nothing to show that the Peabody payments were applied to the later charges as they accrued other than the facts that they were shown to have been paid by

Peabody & Company and that the separate amounts corresponded with the separate items charged.

As between Peabody & Company and the plaintiff, the latter would be clearly estopped from an application of these payments to the old account of Mrs. Clayton, but the relation of Mrs. Clayton to this matter is different.

[2] It appears from her own letters that Conroy was pressing her for settlement of the old account and that she requested him to credit the Peabody payments thereon in order to keep the account alive. On December 27, 1913, she writes: "I shall try to send you one hundred dollars each month to apply to the old account." In a letter dated June 15, 1913, she says: "Your cable of last Monday received. In view of the fact that I have asked you to let the monthly cash payments be applied against the old account, and have fully explained to you the inadvisability of my sending you anything until after the first of the year I do not quite understand your cable," and further in the same letter: "It has not been a path strewn with roses, but if you will kindly apply the monthly cash payments against the old account and do not let Peabody & Company into your confidence, I do see how the business will work itself out to a satisfactory end to all concerned. . . . I would prefer to throw it up sooner than worry, so I repeat, I desire that you credit the monthly cash payments against my old account, which will leave me owing you on a current account." There is an admission here of the indebtedness and a promise to pay the same that might have been sued upon as a new promise in writing, but in any event the direction to credit these subsequent payments on the old account, with the express purpose of preserving the rights of plaintiff's assignor on an open current account for the goods subsequently purchased, in our judgment establishes plaintiff's right to maintain this action and prevents the bar of the statute of limitations. That the amount sued for is owing and unpaid is not disputed.

The judgment is reversed.

Shaw, J., Wilbur, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.